NICORELLI, PLAINTIFF AND APPELLEE, *v.* ERNESTO LÓPEZ & CO., DEFENDANTS AND APPELLANTS.

APPEAL from the District Court of Guayama in an Action of Debt.

No. 1689.—Decided December 21, 1917.

COMPLAINT—DEFICIENCIES SUPPLIED.—ACADEMIC QUESTION.—When the defendant pleads that a complaint is deficient and the alleged deficiencies are supplied by the defendant himself in his answer and by his evidence, a decision on appeal as to whether the complaint is deficient is of purely academic interest.

WRITTEN CONTRACT—EVIDENCE.—While oral evidence is not admissible to contradict, vary, add to or take from the terms of a valid document, this rule is not applicable when the controversy is between one of the parties to the contract and another person who is not a party thereto nor interested therein.

DEBT—TIME OF PAYMENT—ACTION TO FIX TIME.—When in an action to recover a debt which has been acknowledged in a public instrument the court, after considering the evidence, finds that it was intended to set a time for payment but that this was not done; it may, under the provisions of section

1095 of the Civil Code, fix what it considers a reasonable time therefor, it not being necessary to bring an action solely for the purpose of fixing such time.

The facts are stated in the opinion.

*Mr. C. Domínguez Rubio* for the appellants.

*Mr. Manuel A. Martínez Dávila* for the appellee.

MR. JUSTICE DEL TORO delivered the opinion of the court.

The plaintiff brought the present action to recover $2,500 from the defendant firm. There is no doubt as to the existence of the debt. The doubt arises as to when and how it should be paid. The district court settled the question by fixing a period of sixty days from the date on which its judgment should become final. The defendants appealed and assign four errors in their brief, two of which relate to the demurrer ruled on by the district court, one to the admission of evidence and the last to the real and fundamental question involved in the appeal.

Upon being summoned the defendants pleaded that the complaint did not state facts sufficient to determine a cause of action and filed a certain motion to strike out. The court decided both questions against the defendants, who contend that the court erred in so ruling.

If the complaint alone were considered perhaps we should have to agree with the appellants, but the fact is, as we shall see later, that they supplied the deficiences of the complaint in their answer and in their own evidence (*González* v. *Virella,* 24 P. R. R. 376), therefore, to consider now the interesting reasonings set out in their brief would be to take up and dispose of a purely academic question.

The complaint substantially alleges that the defendant firm owed the plaintiff $2,500; that the amount was due, liquidated and recoverable and had not been paid in whole or in part, and that the attempts made to collect it had been futile. The defendants admitted the allegation concerning the capacity of the parties, denied the other allegations in the form presented and demanded proof as to their truth. Moreover, in

some so-called special defenses the defendants alleged that on October 27, 1915, Ernesto López and Cecilio Torres executed a public instrument creating a partnership for the operation of a drug store and stated therein that they owed $2,500, but without specifying to whom or how or when the amount should be paid; that on the hypothesis that the said sum was really due to the plaintiff he could not sue for it because the furniture, fixtures and stock of the said drug store had been sold to another person since July, 1911, and that on the same hypothesis the plaintiff could not sue for the debt because he had previously brought an action against Ernesto López, a member of the defendant firm, and had attached his rights and interests in the drug store.

The case was called to trial and both parties introduced their evidence, that of the plaintiff consisting of a document and the testimony of two witnesses, one of whom was the plaintiff himself, and that of the defendants of the testimony of two witnesses, Ernesto López and Cecilio Torres, members of the firm.

The document introduced in evidence by the plaintiff was the instrument of October 27, 1915, referred to in the answer; that is, the instrument in which López and Torres formed a general partnership under the firm name of Ernesto López & Company for carrying on a drug-store business, wherein it was set out that López was the owner of an establishment known as the Nicorelli Pharmacy, with a stock valued at $3,600, on which he owed $2,500. The said instrument also states that "the firm of Ernesto López & Company assumes the indebtedness of the $2,500 which the Nicorelli Pharmacy owes, as hereinbefore stated."

The witnesses were the plaintiff himself and Domingo Girormini. The plaintiff testified that the $2,500 mentioned in the instrument was owing to him; that he was the owner of the Nicorelli Pharmacy; that he sold it for $4,000 to Er-

nesto Puig, who had paid him nothing; that Puig also sold it for $4,000 to Ernesto López and received promissory notes from López for a like sum; that López formed a partnership with Torres Reyes and then "they agreed with the witness that the firm should pay him $2,500 during the month of November, 1915, when Torres Reyes would sell a property which he owned in Yabucoa and that the balance of $1,500 would be paid to the witness by López Orengo; that he made demands upon the firm for the payment of the said amount and it was refused, and that he has not received the said sum in whole or in part." Girormini testified that Nicorelli commissioned him "to see the defendants and collect the $2,500; that he went to the drug store and asked for López, who, being engaged, sent for Torres; that the latter came and the witness explained the object of his visit but could collect nothing; that he told witness that he had not been able to sell the Yabucoa property and had no money and that they could sue him; that when Torres arrived the witness told him why he had come and Torres replied that he could not pay him the $2,500 for Nicorelli as the money was not due; that he should send the receipts for sixty dollars monthly."

When Nicorelli testified that the debt referred to in the instrument was owing to him the attorney for the defendants objected on the ground that "it was sought to explain a defect in the instrument by the testimony of a person who is not a party to the same, and before this can be done various legal requirements must be complied with. Jones on Evidence, Vol. 3, secs. 434–437."

In fact, section 434 of The Blue Book of Evidence, Vol. 3, p. 145, says:

"The rule in its shortest form is that parol testimony cannot be received to contradict, vary, add to or subtract from the terms of a valid written instrument."

But the said paragraph closes with the following words on page 155 of the said volume:

"The parol evidence rule, however, is limited to the parties, or their privies, to the contract. Where the controversy is between a party to a written contract and one who is neither a party nor a privy to it, the rule excluding parol evidence tending to vary, modify or contradict the writing does not apply."

Moreover, we have seen that in stating the grounds of their objection the defendants said that before the witness could testify "various legal requirements must be complied with," but failed to state what they were. They contend in their brief that it was necessary to set up in the complaint some mistake or imperfection in the deed which is the subject of the controversy and cite section 25 of the Law of Evidence. That section condenses in an admirable manner the doctrine laid down by Jones and refers to the parties, their representatives or successors in interest. But this is not all. The prerequisite insisted on by the defendants was supplied by the defendants themselves in alleging in their answer that a debt of $2,500 was acknowledged in the said instrument, without specifying the name of the debtor or how and when it should be paid, and in alleging further facts on the hypothesis that the plaintiff was the creditor.

We have considered the question from the viewpoint of the appellants, but in fact we believe that the rule of evidence invoked by them is not applicable, because, according to the testimony of the plaintiff, it was not sought "to contradict, vary, add to or subtract from the terms of the instrument" in question. The testimony and the document were independent of each other, the document having been introduced in evidence as proof of the acknowledgment by the defendants of the existence of a debt of $2,500.

As we have said, the evidence of the defendant firm was confined to the testimony of its members, Ernesto López and Cecilio Torres, who agree with Nicorelli as to the origin of the debt, but disagree with him in that they claim that it was stipulated that payment should be made at the rate of sixty dollars monthly.

Let us consider the opinion of the court concerning the evidence. It is as follows:

"If we consider this evidence as a whole we can conclude only that neither of the parties has adhered to the truth. The evidence of the plaintiff seeks to show that the sum of $4,000 was divided into two parts, the firm agreeing to pay $2,500 in November and defendant López Orengo presumably agreeing to pay the balance of $1,500. That the drug store was not prospering is obvious, since the plaintiff's purchaser was not only unable to make any payment on account of the $4,000, but it was attached by the Porto Rico Drug Company for $1,000 and the attachment was dissolved by the intervention of defendant Reyes. It appears from the evidence that these defendants had no other property than that contributed by them to the firm, and it is not probable that in such circumstances the defendants would agree to make a payment of $2,500 one month after starting a business which was not promising. Besides, it appears from the evidence and the testimony of the plaintiff that the promise of payment in November was made subject to the sale of a property belonging to defendant Reyes, so that even conceding that that promise was really made, the date of payment would be conditioned on the sale of the property, and the evidence does not show that the sale was made.

"The evidence of the defendants shows that the plaintiff agreed to accept payment at the rate of sixty dollars monthly, but with the understanding that the debt should be reduced from $4,000 to $2,500. It is not credible that the plaintiff would make such a reduction unless by so doing he would better the conditions of payment. Moreover, these statements are contradicted by the plaintiff's testimony to the effect that the payment of sixty dollars monthly did not refer to this transaction, but to another concerning certain drugs which had been attached and were in the possession of Mr. Bruno, and that the offer to reduce the debt to $2,500 was made in order to effect a settlement, which was not consummated, and was conditioned upon the immediate payment of the money. These statements by the plaintiff seem to the court to be more in harmony with the facts.

"From the foregoing the court is of the opinion that although the parties had in mind the fixing of a date for the payment of the debt the said date was not definitely determined. This explains why the plaintiff refused to accept the sixty dollars monthly offered

to him and why he undertook to collect the amount due to him after the expiration of a reasonable time without having received any substantial payment.

"Summarizing this evidence, there is no doubt that the original amount due to the plaintiff was $4,000; that the defendants assumed the payment of $2,500 of such indebtedness; that they did not fix any definite time or amount for the settlement of the same, but the payment was to be made within a reasonable time; that that time has expired and the defendants have not paid the amount in whole or in part although demand therefor was made upon them by the plaintiff, it not having been shown that the payments made by López Orengo before the partnership was formed were made on this account."

Having made the foregoing findings of fact, the court deemed it proper to make use of the powers granted it by section 1095 of the Civil Code, which provides that should the obligation not fix a period but it can be inferred from its nature and circumstances that there was an intention to grant it to the debtor, the courts shall fix the duration of the same, and consequently sustained the complaint in the manner indicated; that is, that the obligation should be effective sixty days after the judgment should become final.

The appellants contend that the court erred because if the promise was to make the payment in November conditioned upon the sale by Torres Reyes of his Yabucoa property and the property was not sold, the obligation is not actionable. The court's holding has not the scope attributed to it by the appellants. The court stated that it was not satisfied with the evidence of either of the parties as to the date of payment. The court reached the conclusion that it was intended to fix a time for payment but that this was not done. It is true that the sale of the property was mentioned. So, perhaps, was the matter of monthly payments. All this was left uncertain. What is indisputable is that the defendants owed the plaintiff the amount sued for; that they refused to pay it to him, and that the plaintiff thereupon brought suit.

Should he have brought an action only for judgment fixing

a time for the payment of the debt, or was he justified in bringing an action for its immediate recovery?

It is obvious that the theory of the complaint is not that of section 1095 of the Civil Code. The plaintiff alleged that the debt was already due and sought to prove the allegation by his own testimony. Perhaps he had in mind the American jurisprudence which establishes that when no time is fixed for payment the debt will be considered liquidated and recoverable immediately, or upon demand. See the case of *Newhall v. Sherman, Clay & Co.,* 124 Cal. 509, and others there cited

The judge himself applied the statute cited by virtue of the result of the evidence. In our opinion he was right in so doing, and also in holding that, at least in this case, it was not necessary to bring a previous action exclusively to determine a time for payment, and that the whole matter could be definitely disposed of in one action and by a single judgment.

The trial judge says that he has been unable to find any decision of the Supreme Court of Spain bearing directly upon this question. The parties cite none nor have we been able to find any. The commentators Manresa and Scaevola fully discuss article 1128 of the Spanish Civil Code, which is the same as section 1095 of the Civil Code of Porto Rico, and from their reasonings, and more particularly that of Scaevola, it appears that the whole question may be disposed of in a single action.

Manresa says:

"The question of what court is competent to fix the time has not failed to raise doubts—whether it is the court having jurisdiction of the action by reason of the amount of the obligation or always the court of first instance. In favor of the latter theory it is argued that the fixing of the time is a problem whose amount apparently cannot be estimated. We are unhesitatingly of the opinion that the first solution is the proper one, since the fixing of the time, no matter how important it may be, is nothing more than an incident in the fulfilment of an obligation, which, involving as it does a known

amount, falls within the jurisdiction of the court having jurisdiction of the amount."   6 Manresa, Spanish Civ. Code, 164.

Scaevola says:

"What proceeding must be followed to enable the courts to fix the time? The Law of Civil Procedure provides none except an ordinary action involving an amount of greater import, inasmuch as the fixing of the time being independent of the amount of the obligation and therefore without determinable value, only the said proceeding is applicable according to article 483 of the said law.

"We do not refer to cases in which the fulfilment of an obligation and the fixing of a period therefor are prayed for in the same complaint. This case is very frequent and when it occurs the last, being an accessory of the first, must necessarily be governed by the same rules."   19 Scaevola, Civ. Code, 694.

In view of all the foregoing and taking into consideration the fact that the debt was acknowledged in a public instrument on October 27, 1915; that the complaint was filed on January 4, 1916, and that the judgment, without special imposition of costs, was rendered on March 27, 1917, to be effective two months later, we are of the opinion that substantial justice has been done and the judgment appealed from should be in all things

*Affirmed.*

Justices Wolf and Hutchison concurred.
Chief Justice Hernández and Justice Aldrey absent.